UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

ANDREA PRIDE,

    Debtor

_____/

Case No.: 15-40850-wsd
Chapter 13
Hon. Walter Shapero

## **OPINION DENYING CREDITOR'S OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

### Introduction

Debtor's Chapter 13 plan proposes to "cram down" the debt on a vehicle purchased within 910 days of the petition filing date, to which the creditor objected on the basis that 11 U.S.C. § 1325(a)(9) precludes that treatment because the vehicle was "acquired for the personal use of the debtor." The Debtor contends she did not acquire it for personal use and therefore her use of the vehicle permits this proposed treatment. For the following reasons, the creditor's objection is overruled.

Section § 1325(a)(9), commonly referred to as "the hanging paragraph," provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Specifically, Debtor's Chapter 13 Plan proposes a "cram down" of her secured obligation of approximately $10,954.86, to American Credit Acceptance ("Creditor") covering a Mini Cooper

1

vehicle ("Mini"), asserting its market value to be $3,900.00, and proposing payment of $4,108.19 over the life of the Plan. The Mini was admittedly acquired within the 910 day period prior to the petition filing date, and, thus as indicated, the only issue is whether Debtor acquired it for her "personal use."

Facts

Starting in 2009, Debtor, who resides near downtown Detroit, contracted with the Social Security Administration ("SSA") to be a Verbatim Hearing Recording Contractor, under an agreement that by its terms stated she was an independent contractor. She performs those services by driving to various locations in Michigan, such as Detroit, Livonia, Grand Rapids, Battle Creek, and sometimes in Indiana, where the SSA has scheduled hearings in front of an Administrative Law Judge. Debtor's specific duties entail recording the proceedings by utilizing and monitoring recording equipment that is situated at the various hearing locations and provided by the SSA. She is then responsible for timely delivering to SSA a "final product" consisting of notes that are entered into the software provided by the SSA, proposed and admitted exhibits, and a complete digital audio recording of the proceedings. Debtor is not required to supply or transport any equipment to these locations, and uses the Mini only to transport herself to and from the hearing location sites. The hearing sites are determined by SSA's periodic issuance of a list of dates, times, and locations of the hearings, following which Debtor (and other similarly contracted with Verbatim Hearing Recording Contractors) indicate their availability for specified hearings, following which she is notified to which hearings she is assigned. Debtor routinely documents in a personal planner notebook the various hearings she attends and the number of miles traveled to and from the hearing sites. The evidence clearly indicates that some 90% or

more of the total miles driven in the Mini are driven in the course of her going to and from her home and the various SSA hearing sites. She is paid $80.00 for attending each hearing, regardless of its duration. If for some reason she appears, but the hearing is not held, she is paid $5.00 for that hearing. She is paid monthly pursuant to an invoice that she prepares and submits to SSA. She is not reimbursed for mileage, gas, or any other costs. Debtor's Schedule I does not list this SSA income as employment income. On her Statement of Financial Affairs, answering the question relating to income from employment or operation of business, she lists this SSA income as "self-employment income." In her 2013 federal income tax return, Debtor described herself as a private contractor and listed her gross receipts as $53,065.00, and business expenses totaling $30,455.00 including $11,301.00 for car expenses, showing also unreimbursed business expenses totaling $11,210.00, which includes business miles traveled of 18,996, and non-business miles of 3,996. The cost of operating the Mini in the course of her work was reported by her for tax purposes as a business expense. Her net taxable income for that year was $22,010.00. For 2014, her gross receipts are shown as $34,440.00, with business expenses totaling $14,875.00, including car expenses of $912.00.

Debtor purchased the Mini on July 16, 2013. At that time, she also owned a 1992 Saturn. That Saturn was not sufficiently reliable and so she disposed of it some two months later. It is not clear exactly how Debtor utilized the two vehicles during the approximately two month span when she owned them both. In any event, however, it is undisputed that Debtor in fact acquired the Mini as a replacement for the Saturn.

The Mini purchase contract contains a check-a-box option under a heading stating "Primary Use For Which Purchased," which says "Personal, family, or household unless otherwise

3

indicated below"; the "below" being two checkable boxes labeled "business" and "agricultural." Neither of those latter two checkable boxes was checked. Debtor claims she never noticed or read this provision, though she admittedly signed the contract. An associated Credit Application typed in form, asks for "employment title" after which is stated "Clerk"; and Employment type, after which is stated "Professional." Debtor credibly testified that she told the salesperson with whom she dealt the exact nature and type of her employment and what she was going to use the car for, irrespective of what the indicated completed documents ended up stating. She also stated she initially hand wrote a separate credit application form (a copy of which she did not retain), the Court concluding it may very well have been at variance with the indicated final filled in documents subsequently typed out by the dealer.

Discussion

As noted, the dispute here is whether the Debtor's acquisition of the vehicle falls within the statutory definition of having been acquired for her "personal" use. The dictionary definitions of the word "personal" include: (a) "of or relating to the private aspects of one's life"; (b) "belonging to, or intended for, a particular person and no one else"; (c) "of or concerning one's private life, relationships, and emotions, rather than connected with one's public or professional life"; and (d) "appertaining to the person; belonging to an individual; limited to the person: having the nature or partaking of the qualities of human beings, or of movable property."[1] There appears to be no legislative history that might shed light on how to interpret the statute.

In a loose or broad sense, one could say that Debtor uses the Mini to drive to and from

---

[1] Separate questions, though not relevant here, would be situations where the vehicle is acquired by a debtor not exclusively for his or her own use, but instead either acquired or in fact used by another, i.e. a family member, or a situation where the intent and use at the time of acquisition was exclusively that of or for the debtor, but it later changes to use by another. *See In re Solis*, 356 B.R. 398, 409 (Bankr. S.D. Tex. 2006).

work, albeit in the context of the factual scenario present here. Therefore, at first blush, one might be tempted to see this case as one governed by those which appear to categorically hold that driving to and from work is always "personal." That point of view was explained in *In re Joseph*, 2007 WL 950267, *2-4 (Bankr. W.D. La. Mar. 20, 2007), where the Court opined:

> Courts have been divided on the meaning of personal use in the context of the hanging paragraph. In *In re Johnson,* 350 B.R. 712 (Bankr.W.D.La.2006), and *In re Hill,* 352 B.R. 69 (Bankr.W.D.La.2006) (Schiff, J.), the court ruled that the debtors' vehicles were not acquired for "personal use" based on evidence that the debtors used their vehicles for transportation to their place of employment. Instead, the court ruled that the vehicles did not fall within the hanging paragraph because the vehicles allowed the debtors to "make a significant contribution to the gross income of the family unit." *Johnson,* 350 B.R. 712.
>
> Following *Johnson,* other courts have similarly grappled with the hanging paragraph and the meaning of "personal use." Like *Johnson,* the consensus of these decisions is that "personal use" means a *non-business* use. *See, e.g., In re Lowder,* 2006 WL 1794737 (Bankr.D.Kan. June 28, 2006); *In re White,* 352 B.R. 633 (Bankr.E.D.La.2006); *In re Solis,* 356 B.R. 398 (Bankr.S.D.Tex.2006); *In re Wilson,* 2006 WL 3512921 (Bankr.D.Kan. Dec.5, 2006). In *Solis,* the court explained that personal (or non-business) use is a use that "benefits the debtor(s) such as transportation that satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral."356 B.R. at 410. In contrast, a vehicle that is used for a business or "profit-making motive" falls outside the scope of the hanging paragraph. *Id.*
>
> These courts, however, almost uniformly agree that use of a vehicle to travel to and from a debtor's place of employment is a personal use of the vehicle, not a business or profit-making use. *See, e.g., Lowder,* 2006 WL 1794737 at *4; *White*, 352 B.R. at 641; *Solis*, 356 B.R. at 410; *Wilson*, 2006 WL 3512921 at *3. For example, the debtor in *Lowder*, as in the present case, used a car for transportation to and from work, but did not use the car to carry out work-related responsibilities once she arrived at work. The *Lowder* court looked to the Fourth Circuit's discussion of personal use in the context of redemption under 11 U.S.C. § 722 in *Cypher Chiropractic Center v. Runski*, 102 F.3d 744 (4th Cir.1996). Based on *Runski*, the *Lowder* court concluded that the hanging paragraph does not apply if the vehicle in question was acquired for "business purposes," and that "[m]erely acquiring vehicle for [the debtor's] own use, with one of the uses contemplated being to drive to and from work, is not for 'business' purposes; it is for personal use." 2006 WL 1794737 at *4.

5

> After careful consideration, the court agrees with the reasoning of *Solis*, *Lowder*, *White*, and *Wilson* as to the meaning of "personal use" in the context of the hanging paragraph. Transportation to and from work is a personal use in the sense that it satisfies the debtor's personal needs and obligations—namely, the need for a reliable means for the debtor to commute to his or her place of employment. The court recognizes that work transportation has a monetary value in the sense that it allows the debtor to maintain a job (especially where there is no reliable public transportation), and that the income from the debtor's job may provide monetary benefits to the debtor and the debtor's family. However, these benefits are still personal to the debtor and the debtor's family. Any other reading would essentially eradicate the distinction between personal and business use.
>
> In order to establish that a vehicle is used for a "business" or "profit-making" purpose, a debtor must show that the vehicle is used to perform the functions of a business or a trade. In other words, does the debtor use the vehicle to carry out his or her job duties once the debtor arrives at work?

(footnotes omitted). That Court expansively concluded that (a) using a vehicle to go back and forth from the debtor's place of employment is always a "personal" use; and (b) to establish something other than personal use, the debtor must show that the vehicle is used "to carry out the debtor's job duties once the debtor arrives at work." In this Court's view, such conclusions are inappropriately broad, insufficiently nuanced, and fail to take into account factual situations like the one at hand, or other variations thereof which might very well call for a different result. A conclusion that going to and from work should always be seen as "personal use" might make some sense but possibly only when viewed from a perspective or assumption that "work" involves (as is most often and traditionally the case) a fixed single place of employment, traveled to on a regular prescheduled relatively full time basis, and where travel time and mileage is relatively short and non-variable. Analytical difficulties abound, however, when that is not true and the case involves different facts and situations comprised of more flexible working environments in what is becoming more of a "freelance economy."

6

Another approach is by way of categorizing a particular use as a "business" use on the assumption, that by so doing, such perforce precludes it from being "personal." That approach essentially assumes that whatever is categorizable as "business" cannot be "personal". See cases which have held that, for purposes of § 1325(a), "personal use" means "non-business" use, *e.g. In re Powell*, 423 B.R. 862, 865 (C.D. Ill. 2010) (citing *In re Grimme*, 371 B.R. 814 (Bankr. S.D. Ohio 2007)); *In re Strange*, 424 B.R. 584, 589 (Bankr. M.D. Ga. 2010). Carrying that approach further, various cited definitions of "business use" include (a) use for a profit-making motive, *Joseph* at *2; (b) use for generating income for the debtor's maintenance and support or significant contribution to income, *Hill*, 352 B.R. at 73-74; and (c) a significant, material use for the benefit of the debtor's non-personal wants, needs, or obligations, *Solis*, 356 B.R. at 411. Say a debtor works solely or largely from home and does not have a commute (an increasingly common situation), but does, for instance, use her vehicle to drive her children to school and/or daycare for the purpose of eliminating distractions, thus increasing her working-at-home productivity and thus enhancing her income. Would that use be a "business use"?

Driving to and from work inherently involves an income or profit-making motive in the sense that one needs and is motivated to get to one's place(s) of work to earn one's income. In that sense it can be argued that all commutes to work must necessarily be a business use. One would assume that working individuals acting in their rational self-interest, generally undertake material financial obligations, such as purchasing a vehicle, only when they believe such would have a net total benefit to them, i.e. comparing the costs of purchase and ownership vs. the benefits of having a vehicle. In that sense, every vehicle is acquired by a currently working persons not living off passive income, or one who has realistic hopes and prospects of obtaining

7

work, can be said to have been one acquired with an income generating or profit making motive or intent.

Debtor framed the legal issue by pointing out three different tests utilized by courts to determine what constitutes "personal use." These tests are summarized in the case of *In re Ozenkoski*, 417 B.R. 794, 798-99 (Bankr. E.D. Mo. 2009) as follows:

> To determine whether a debtor's vehicle was acquired for personal use as opposed to business use, the court considers the "totality of the circumstances." *In re Hill,* 352 B.R. 69, 72 (Bankr.W.D.La.2006); *In re Solis,* 356 B.R. 398, 408 (Bankr.S.D.Tex.2006). While there is no bright line rule to define personal as it is used in § 1325(a), three major variations of the "totality of circumstances" approach have emerged in the relevant case law.
>
> In *Hill,* the court found the appropriate test to be "whether the acquisition of the vehicle enabled the debtor to make a significant contribution to the gross income of the family unit." *Hill,* 352 B.R. at 73. In *Hill,* the debtors' use of a vehicle to commute to and from work was a sufficient enough contribution to the debtors' gross income that the vehicle was not considered a "personal" vehicle for purposes of § 1325(a). *Id.* The *Hill* Court noted that, in order to adhere to the plain meaning of § 1325, the court must determine whether the vehicle was "acquired for personal use" by considering *only* the debtor's intention for the vehicle at the time of purchase and ignore any "subsequent use of the vehicle for solely and unquestionably business purposes." *Id.* at 72.
>
> A second application of the "totality of the circumstances" approach is found in *Solis,* 356 B.R. at 408. Rather than developing standards for what *does not* constitute personal use, as the *Hill* Court did, the court in *Solis* focused on defining what *does* constitute personal use. *Id.* at 410. The court held that a vehicle is a personal use vehicle if it is used to satisfy "significant and material" personal needs even when it is also used for business purposes. *Id.* at 409. The *Solis* Court also held that, in order for a vehicle to be deemed a personal use vehicle, the debtor's intention at the time of purchase must be to use the vehicle for "significant and material" personal use. *Id.* The *Solis* Court noted that, where there exists a realistic alternative to owning a vehicle, such as public transportation, merely commuting to and from work constitutes personal use. *Id.* at 410.
>
> In *Joseph,* a third approach to applying the "totality of the circumstances" analysis was introduced. *Joseph,* 2007 WL 950267 [(Bankr. W.D. La. Mar. 20, 2007)]. Here, the court recognized the reality that many vehicles are used to satisfy a combination of both business and personal needs. The *Joseph* Court held

8

15-40850-mlo    Doc 76    Filed 03/02/16    Entered 03/03/16 06:54:43    Page 8 of 12

the appropriate test for whether a vehicle was acquired for personal use or business use is whether or not the car is predominately used to perform functions of a business or trade. *Id.* at *4. The court defines predominate as "the nature and extent of any personal use of the vehicle, and the relative number of miles that the vehicle is driven for personal versus business uses." *Id.* The court weighed factors such as the nature of the debtor's work, whether the vehicle was used for business-related duties, whether the employer required the purchase of the vehicle for those duties, whether the employer reimbursed the debtor for miles driven in the course of employment, whether the debtor claims the car as a business vehicle on yearly income tax returns, and the indication of personal or business on the sales contract. *Id.* at *3. The court held that the core consideration is whether the vehicle is actually used to perform work-related duties. *Id.*

Debtor argues that the *Joseph* test is the most reasonable, but that she in any event satisfies all three tests because she overwhelmingly used the Mini to travel to and from her SSA duty sites.

In any real-world situation, every debtor's use of a vehicle is likely some mix of personal and business. *In re Hill*, 352 B.R. at 73 ("Most, if not all, situations will be similar to the instant case where the use of the vehicle is a blend of business and personal use."); *Ozenkoski*, 417 B.R. at 799 ("While not every personal use vehicle will be used for business purposes, most business use vehicles will be used for an occasional personal purpose."). *See also In re Solis*, 356 B.R. at 410, where the Court opined:

> Therefore, the Court concludes that "personal use" *includes* any use of the vehicle that benefits the debtor(s) such as transportation that satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral obligations.

(emphasis added) (footnote omitted). The word "includes" is not one of limitation and thus allows for other un-enumerated possibilities.

The statute states "acquired for the personal use of the debtor," without using any qualifying language such as "solely, exclusively, mostly, primarily, or partially." *Joseph* at *4 (finding that the inquiry should turn on the "predominant" use of the vehicle); *Solis*, 356 B.R. at 409

9

(requiring that the personal use must be "significant and material"). This idea is recognized in Ozenkoski, 427 B.R. at 801 where the Court said: "The fact that 82.5% of the miles are business miles is sufficient to show the Vehicle is predominately used as a business used vehicle". The statute can arguably be interpreted to mean either that (a) *any,* even *de minimis* personal use of the vehicle, triggers the anti-cram down provision of § 1325(a)(9); or (b) there needs to be read into it the concept that the personal use must be the "predominant use" or "significant and material." The former option would effectively write this statute out of the Bankruptcy Code, which principles of statutory construction disfavor. *Hill*, 352 B.R. at 73. This Court adopts the *Hill* court's conclusion and rejects the former option because interpreting the statute in that manner that would make it an absurdity. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."). Put differently Court adopts the latter option because it is an, or possibly the only, option that gives the statute some meaning and application.

The better analysis, therefore, involves utilization of the totality of the salient circumstances approach, similar to that utilized in *Joseph, supra.* As applied to the facts in this case, those salient circumstances are a combination of:

(1) A material variance between the facts in this case and the essential premise underlying the holdings that the going to and from work (at least in the traditional sense) is always "personal";

(2) Facts that indicate (and in fact state) that Debtor is essentially an independent contractor, rather than an employee, and, as such she is, or is akin to, one who owns and operates an

10

independent court reporting service;

(3) The noted business income tax treatment of Debtor's income and expenses relating to her use of the Mini, consistent with the foregoing;

(4) Debtor's some 90% use of the Mini relating to her SSA duties, which involve multiple, ever changing, work sites, which she essentially has the power to choose (or in effect decline); and

(5) The unlikely possibility of there being available to Debtor public or alternate transportation for her to get to the indicated SSA locations at the times required;

The Court places very limited weight on the referred-to credit application documents, to the extent to which they may indicate acquisition for personal use. Creditor's arguments as to such, at best, elevate form over substance, are inconsistent with what are clearly Debtor's actual reasons for acquiring the Mini, and in any event are outweighed by the totality of the other facts.

In sum then: (a) this is not a case that presents a set of facts to which one should apply the going to and from work is always "personal" approach, even if one accepted that basic, but not universally accepted approach; (b) applying the "business" approach, given the miles travelled as a percentage of the total use, in the context of the varied destinations, the nature of the work and the other facts, one can conclude the subject vehicle should be seen as one acquired for business and not personal use; and (c) in any event the totality of circumstances approach is preferable, and, applying it in this case, requires a conclusion favoring the Debtor's position.

Conclusion

The Creditor's objection to the confirmation of Debtors Ch. 13 plan is denied.

.

11

**Signed on March 02, 2016**

                                            /s/ Walter Shapero
                                          Walter Shapero
                                          United States Bankruptcy Judge